IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOEY HOWELL,

                Plaintiff,

v.

SHAWN GALLINGER, HEIDI BROWN, and
CRAIG TOM,

                Defendants.[1]

OPINION & ORDER

16-cv-832-jdp

---

    Pro se plaintiff Joey Howell is an inmate confined at the Wisconsin Secure Program Facility (WSPF). I granted him leave to proceed on Eighth Amendment deliberate indifference claims against defendants Shawn Gallinger and Heidi Brown, WSPF staff who he claims stood by while he attempted suicide by swallowing pills, and defendant Craig Tom, another staff member who he claims delayed in sending him to the emergency room after the suicide attempt. Dkt. 9.

    The parties have filed cross-motions for summary judgment. Dkt. 16 and Dkt. 29. Defendants responded to Howell's summary judgment motion, but Howell failed to respond to defendants' motion. On August 7, 2017, Howell sent a letter to the court stating that he hadn't "received any documents from the courts" and asking that he be sent copies of all recent filings and be allowed additional time to respond to any motions filed. Dkt. 40. Defendants promptly filed several declarations indicating that Howell's mail had not been withheld. Dkt. 43. They sent new copies of their summary judgment materials to Howell, just in case. *Id.*

---

[1] I have updated the caption to reflect defendants' full names.

Howell acknowledged receipt of those materials on August 10. Dkt. 42. He explained that he would "do everything within [his] power to address" the materials. *Id.* at 1. But he has not filed anything more with the court since then. Howell has had ample time to respond to defendants' summary judgment motion, and he has not explained why he needs more time. So I will deny his motion for an extension of time and address the parties' cross-motions for summary judgment. Genuine disputes of fact preclude summary judgment as to Gallinger, but because there is no evidence that Brown and Tom were deliberately indifferent to Howell's risk of suicide, I will grant summary judgment in their favor. Howell's claim against Gallinger will proceed to trial.

UNDISPUTED FACTS

The following facts are undisputed except where noted. They are adopted from the parties' proposed findings of fact submitted in support of their summary judgment motions. Because Howell failed to respond to defendants' proposed findings, I will consider those findings undisputed unless they conflict with Howell's.

On December 2, 2015, Howell was housed in WSPF's restrictive housing unit, Alpha Unit. Gallinger and Brown were correctional officers assigned to work on Alpha Unit that day. Just after 8 a.m., Gallinger and Brown were offering recreation time to Alpha Unit inmates. When Gallinger stopped at Howell's cell and asked if he wanted recreation, Howell asked to speak with a psychological services unit (PSU) staff member. According to defendants, Gallinger told Howell to submit a PSU request slip, reiterated the recreation offer, and then walked away. According to Howell, he said it was an "emergency" and then repeated his request for help while showing Gallinger a handful of pills, but Gallinger just offered him recreation

2

again and then walked away as Howell yelled "I'm about to take these pills in my hand." Dkt. 38, ¶¶ 2–5.

No more than a few minutes later, Howell knocked on the window of his cell to get Brown's attention and then took the handful of pills. Brown ordered Howell not to take the pills, but Howell swallowed them. Brown immediately reported Howell's actions to shift sergeant Govier. Govier told Brown to wait with Howell and then notified PSU, the health services unit, and the security supervisor. According to Howell, at some point around this time, he told Gallinger that he was "having a psychological melt down" and wanted to see PSU or he would kill himself. *Id.* ¶ 8. Defendants deny that Howell said this to Gallinger.

About five minutes later, Tom, the lieutenant in charge of transportation, arrived at Howell's cell, and Howell was placed in restraints and escorted to the health services room, where he was assessed by a nurse. Howell refused to say exactly what pills he had ingested, other than that he'd been saving up his daily medications for about six days. The nurse estimated that Howell probably ingested 300 mg of nortriptyline, 240 mg of duloxetine, and 900 mg of bupropion, all antidepressants. The nurse determined that Howell's vital signs were stable, that his airway was open and clear, that he had no difficulty breathing, that he had no apparent abnormalities, and that he was alert. The nurse relayed her assessment to a doctor, who authorized Howell's transportation to the emergency room for additional assessment and treatment, if necessary.

Howell was then escorted to an intake holding cell to be strip searched before being transported to the emergency room. The strip search is a mandatory procedure before transport, except for "medical emergency trips where a strip search is not practical or possible."

Dkt. 35-1. During a strip search, inmates must "remove" braids in their hair. *Id.* Tom ordered Howell to remove his braids; Howell complied.

Howell was then taken to the emergency room, where he was given activated charcoal. He vomited once and complained of fatigue, but "remained hemodynamically stable and neurologically intact" during the visit and was discharged that afternoon. Dkt. 31, ¶ 44.

ANALYSIS

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When, as here, the parties have filed cross-motions for summary judgment, the court "look[s] to the burden of proof that each party would bear on an issue of trial [and] then require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If either party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment against that party is appropriate. *Mid. Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (quoting *Tatlovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1990)). "As with any summary judgment motion, this [c]ourt reviews these cross-motions 'construing all facts, and drawing all reasonable inference from those facts, in favor of . . . the non-moving party.'" *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)).

Howell contends that defendants were deliberately indifferent to his suicide attempt, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. To

prevail on his claims, Howell must show that he "suffered an objectively serious harm that presented a substantial risk to his safety" and that defendants knew of and "intentionally disregarded the risk." *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010).

A. **Objectively serious harm**

"[I]t goes without saying that suicide is a serious harm." *Id.* (quoting *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)). Defendants argue that Howell has not shown that he was "actually harmed" because he wasn't seriously injured—his suicide attempt was unsuccessful and only resulted in fatigue and a single episode of vomiting. In support of their argument, defendants rely solely on *Lindsey v. Runice*, an unpublished opinion from the Eastern District of Wisconsin. No. 16-cv-75 (Apr. 10, 2017), *available at* Dkt. 30-1. *Lindsey* featured a similar deliberate-indifference-to-risk-of-suicide claim brought by a prisoner against prison officials. The court granted summary judgment in the defendants' favor on an exhaustion defense, but it mentioned that the plaintiff's case would have failed on the merits, too, because the plaintiff took several pills that were within the recommended dosage level and suffered no pain or damage of any kind.

*Lindsey*'s facts differ materially from the facts in this case, where there is no evidence that the pills Howell ingested were within the recommended daily dosage level. Rather, the evidence indicates that Howell may have taken two to six times the recommended maximum daily dosage of three different drugs. *See Physicians' Desk Reference* S-234, S-612, S-978 (2016). And regardless, the dicta within another district court's summary judgment opinion is not binding, and I am free to disagree with it. As I have explained before, "an actionable harm under the deliberate indifference standard need not inflict physical injury; psychological harm, extreme indignities, or 'heightened risk of future injury' can all violate the Eighth Amendment.

5

And the Seventh Circuit has not held, as far as I am aware, that a prisoner expose to suicide risk cannot assert a deliberate indifference claims just because he did not succeed in his suicide attempt." *Ards v. Anderson*, No. 16-cv-341, 2017 WL 6734189, at *7 (W.D. Wis. Dec. 29, 2017) (footnote omitted) (quoting *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013)); *see also id.* at *7 n.4 (collecting cases). Viewing the facts in the light most favorable to Howell, I conclude that a reasonable jury could find that he suffered an objectively serious harm.

**B. Deliberate indifference**

The remainder of the analysis is defendant-specific: Howell must show that each defendant was subjectively aware of and intentionally disregarded his risk of committing suicide. *See Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006).

Beginning with defendant Gallinger, Howell points to evidence—his verified complaint—indicating that that Howell asked Gallinger for psychological help, told him it was an emergency, showed him a handful of pills, and said he would swallow them, but Gallinger offered no help and simply walked away. Viewing the facts in the light most favorable to Howell, as I must when considering defendants' summary judgment motion, I conclude that a reasonable jury could find that Gallinger was aware of and intentionally disregarded Howell's risk of committing suicide. Defendants argue that Gallinger wasn't subjectively aware of a serious risk of harm because he didn't know "whether Howell had previously engaged in self-harm attempts," Dkt. 30, at 10, but that doesn't matter. Even if Howell had no history of suicide attempts, he made clear to Gallinger that he was about to attempt suicide at that moment. So I will deny defendants' motion for summary judgment as to Gallinger. I will also deny Howell's motion for summary judgment as to Gallinger. Viewing the facts in the light most favorable to defendants, Howell asked to see a PSU staff member and Gallinger told him

how to schedule an appointment. A reasonable jury could find that Gallinger didn't know that Howell was at risk of committing suicide and that he responded appropriately to Howell's vague request for psychological services.

I turn next to defendant Brown. The material facts concerning Brown are undisputed: Howell got Brown's attention and then took the handful of pills, despite Brown's order not to do so. Brown immediately reported Howell's actions to his shift sergeant and then waited with Howell while the shift sergeant notified PSU, the health services unit, and the security supervisor. A reasonable jury could find that Brown was aware of Howell's risk of suicide, but no reasonable jury could find that Brown was deliberately indifferent to that risk. So I will grant summary judgment in defendants' favor as to Brown.

Finally, I turn to defendant Tom. Tom ordered Howell to remove his braids before transporting him to the emergency room. Howell argues that this was against policy and delayed Howell's receipt of medical treatment. A delay in treatment may constitute deliberate indifference if it unnecessarily prolongs the inmate's pain, *see Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012), or causes "some degree of harm." *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). Here, there is no indication that Tom caused Howell any harm when he ordered Howell to remove his braids. So I will grant summary judgment in defendants' favor as to Tom.

C. **Qualified immunity**

Finally, defendants assert a qualified immunity defense. This defense is relevant only to Gallinger, the sole remaining defendant. Once a government official raises the qualified immunity defense, a plaintiff must show: (1) he suffered a violation of a statutory or constitutional right; and (2) the law was "clearly established at the time of the alleged

violation." *Figgs v. Dawson*, 829 F.3d 895, 905 (7th Cir. 2016) (quoting *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001)). Howell satisfies the first requirement, as he has a potentially meritorious deliberate indifference claim against Gallinger, as discussed above. The question here is whether the law was clearly established before December 2, 2015.

A constitutional standard is "'clearly established' when 'various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand.'" *Id.* (quoting Campbell, 256 F.3d at 701). A plaintiff need only show that "a reasonable official would understand that what he is doing violates that right." *Lewis v. McLean*, 864 F.3d 556, 566 (7th Cir. 2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

As I explained in *Ards*, "it is beyond dispute that a reasonable official would have known [in 2014] that the law prohibited [deliberate indifference] to an inmate's suicide risk." 2017 WL 6734189, at *13 (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)). Defendants cite *Lindsey* again. I reiterate that the relevant language in *Lindsey* is dicta, and that the opinion is an unpublished one from a district court. Additionally, the opinion in *Lindsey* was issued *after* December 2, 2015, and therefore could not have informed a reasonable official's understanding on the date in question. And the fact that *Lindsey* concerned suicide by pills, unlike *Sanville*, *Collins*, or *Minix*, is not dispositive. A plaintiff need not show "the particular violation in question to have been previously held unlawful." *Lewis*, 864 F.3d at 566. Regardless of the particular method of suicide, it has been clearly established for decades that government officials cannot deliberately ignore an inmate's substantial suicide risk. *Sanville*, 266 F.3d at 740. So I will deny defendants' summary judgment motion as to Gallinger.

8

ORDER

IT IS ORDERED that:

1. Plaintiff Joey Howell's motion for an extension of time, Dkt. 40, is DENIED.

2. Plaintiff's motion for summary judgment, Dkt. 16, is DENIED.

3. Defendants' motion for summary judgment Dkt. 29, is GRANTED as to Heidi Brown and Craig Tom and DENIED as to Gallinger.

4. Brown and Tom are dismissed from the case.

Entered March 28, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge